## JOSHUA WATER CONTROL DISTRICT, et al. v. DEPARTMENT OF NATURAL RESOURCES

Case No. 84-3451R

State of Florida, Division of Administrative Hearings

February 22, 1985

### APPEARANCES OF COUNSEL

**Terry E. Lewis** and **Cari L. Roth** for petitioners.

**Spiro T. Kypreos** for respondent.

### OPINION

### FINAL ORDER

ROBERT T. BENTON, II, Hearing Officer.

This matter came on for hearing in Tallahassee, Florida, before the Division of Administrative Hearings, by its duly designated Hearing Officer, Robert T. Benton, II, on November 7, 1984. By order entered November 1, 1984, this case was consolidated for hearing with Case No. 84-3679, the substantial interest proceeding in which petitioners here seek additional grant moneys for 1984-1985 from respondent's aquatic plant control funding program.

In their petition to determine the invalidity of a rule, petitioning water control districts challenge the "proposed DNR application of Rule 16C-50.03, Florida Administrative Code with respect to petition-

ers" and "an unwritten policy . . . which defines the term 'public benefit' as contained in Rule 16C-50.03."

## ISSUE

Whether respondent's alleged policy defining "public benefit" for purposes of Rule 16C-50.03, Florida Administrative Code, constitutes an invalid exercise of delegated legislative authority?

## FINDINGS OF FACT

Petitioners are water control districts created by special legislative acts, Ch. 69-1010, Laws of Florida (1969) (Joshua), Ch. 67-723, Laws of Florida (1967) (County Line) and 65-664, Laws of Florida (1965) (East Charlotte), and governed by Chapter 298, Florida Statutes. Within their respective jurisdictions, they have dug canals and ditches, and erected water control structures. Because aquatic weeds tend to clog the ditches and canals, each district systematically introduces herbicides. To pay for these activities, petitioners rely on ad valorem tax revenues, for the most part.

Respondent Department of Natural Resources (DNR) administers the State Aquatic Plant Control Trust Fund, from which it disburses public moneys, subsidizing eligible applicants' weed control efforts. When petitioners applied for governmental assistance for fiscal year 1984-1985, DNR proposed to treat only weed control planned for perimeter canals as eligible for funding. The land within petitioners' jurisdiction is used primarily for agricultural purposes.

## DNR RELIES ON 1982 AMENDMENT

In stating its reasons for proposing to deny in part petitioners' applications, DNR cited Rule 16C-50.03, Florida Administrative Code, which provides:

> Waters Eligible for State Aquatic Plant Control Funds. Only waters which are accessible to the general public or which are managed for flood prevention for public benefit by applicants, shall be eligible for state aquatic plant control funds as provided in section 372.925(5), Florida Statutes. Eligible waters shall be permanent bodies of water, except in drought conditions, and shall not include intermittent water drainage ditches. Eligible "ditchbank" areas shall be those areas within five (5) feet of the water's edge at the time of treatment.

The economic impact statement prepared in conjunction with the 1982 amendment of Rule 16C-50.03, Florida Administrative Code, stated:

> The second eligibility restriction is to assure that funding of

aquatic plant control activities for the purpose of flood prevention serves to benefit the general public, not isolated commercial interests. By way of example: current rules allow funding of private agricultural irrigation or drainage canals, thereby reducing the cost of the recipient's products (or increasing his profits) at the expense of the general public and to the detriment of competition in his industry.

Petitioners' Exhibit No. 23, p.6.

DNR explained its position on petitioners' pending applications in Mr. Jubinsky's letters of October 16, 1984:

The Department determines how the program objectives can be practically achieved to protect human health, safety, and recreation, and to the greatest practicable, prevent injury to plant and animal life and property. Each year we determine, on a case by case basis, the extent to which an applicant's waters are accessible to the public for recreation or provide flood control for public benefit. The portions of your district deemed eligible for funding were determined to provide flood control related to human health and safety, by the prevention of flooding in residential areas. The other portions of your district were determined to have insignificant or no benefit for the protection of human health or safety or recreation. Consequently, that portion of the workplan is ineligible for funding.

Petitioners' Exhibit No. 17

Prior to amendment of Rule 16C-50.03, Florida Administrative Code, DNR treated all waters within petitioners' jurisdictions as eligible for funding. With the 1982 amendment DNR "started making a distinction" between "aquatic plant control that was primarily related to protection of health, safety and welfare and aquatic plant control directed towards protection of plant, animal and property." (T. 127) Petitioners' grant applications for 1982-1983 were denied on the authority of Rule 16C-50.03, Florida Administrative Code, after the amendment became effective. Petitioners' Exhibit No. 14

## POLK COUNTY

In a letter to Mr. Mike Mahler, dated October 31, 1983, DNR advised that 15 of 34 Polk County Lakes not then included in the state aquatic control program were eligible for inclusion. The letter stated:

After several discussions with the Department's legal staff, it has been determined that it is difficult, if not impossible to define the terms general public, accessible, and public benefit.

Often such terms are intentionally left somewhat vague to permit

184

case by case determinations within the framework of the established regulatory scheme.

The primary issue is whether the public, other than the landowners in the immediate area, derive some substantial benefit from the water body. For example, applications have been accepted for vegetation control in a water body where there existed continuous public access to the bank of the water body over publicly-owned property, even where no boat access was evident. Please submit any requests for inclusion of additional water bodies into the program on the appropriate application for Department Determination of Eligibility.

I hope this will serve as some guidance in trying to determine which water bodies in your region may be eligible for the State Program.

Petitioners' Exhibit No. 24

There was no showing that DNR ever invoked this letter in its dealings with petitioners or anybody else, other than Mr. Mahler.

## NOT ALL MONEY USED

Like other applicants, petitioners submitted work plans which reflected total outlays budgets for weed control. To the extent DNR granted applications, it authorized reimbursement of a small, uniform fraction (18 percent) of total costs anticipated by those eligible. If the uniform fraction had been as high as one half, there would not have been money enough for all the applicants deemed eligible. The State Aquatic Plant Control Trust Fund regularly ends the year with substantial sums on hand. "[A]t least a few hundred thousand" (T. 124) dollars remained in the State Aquatic Plant Control Trust Fund at the end of a recent year.

The parties filed proposed final orders. Proposed findings of fact have been adopted unless cumulative, subordinate, immaterial, unnecessary or unsupported by the weight of the evidence.

## CONCLUSIONS OF LAW

Petitioners' applications having been denied (in part) in reliance on Rule 16C-50.03, Florida Administrative Code, petitioners instituted substantial interest administrative proceedings on the denials, and the Section 120.57 case remains pending. Petitioners do not contend that the waters they manage "are accessible to the general public."

Petitioners' rule challenge proceeds on two theories. The first is that DNR proposes to enforce against them a rule that was never formally adopted, in order to deny the greater part of their applications for grant money. The second is that the "proposed DNR application of

**185**

Rule 16C-50.03, Florida Administrative Code with respect to petitioners" amounts to an invalid rule. A challenge to the application of a rule to specific parties is properly the subject of Section 120.57 proceedings.

## NO UNPROMULGATED RULE

A policy implicit in agency action does not amount to an administrative rule just because it has been consistently applied. *Home Health Professional Services, Inc. v. Department of Health and Rehabilitative Services*, No. AY-468 (Fla. 1st DCA; Jan. 11, 1985), 10 FLW 159. The Administrative Procedure Act defines the term "rule" as

> each agency statement of general applicability that implements, interprets, or prescribes law or policy . . . . The term includes amendment . . . of a rule. The term does not include . . . (b) . . . agency legal opinions prior to their use in connection with an agency action. Section 120.52(15), Florida Statutes (1984 Supp.).

Mere "unwritten policy" cannot amount to an illicit rule. *Department of Corrections v. McCain Sales of Florida, Inc.*, 400 So.2d 1301 (Fla. 1st DCA 1981) ("a program as such is not a statement of policy" at 1302). A rule is a statement "of general applicability . . . applied and . . . intended to be applied with the force of a rule of law." *State, Department of Administration v. Stevens*, 344 So.2d 290, 296 (Fla. 1st DCA 1977); *McDonald v. Department of Banking and Finance*, 346 So.2d 569, 580-581 (Fla. 1st DCA 1977).

Petitioners' thesis that an unpromulgated rule, a statement of policy "applicabl[e and] . . . and applied" statewide, but never adopted in the manner specified by Chapter 120.54, Florida Statutes (1984 Supp.), cannot withstand challenge is not open to question. *State, Department of Administration v. Stevens*, 344 So.2d 290 (Fla. 1st DCA 1977). But petitioners did not prove, in the present case, the existence of any writing that purported to govern applications for aquatic weed control subsidies independently of Rule 16C-50.03, Florida Administrative Code.

Petitioners point to various documents, received as exhibits at hearing, that they claim evidence the *de facto* rule, which they perceive to be the basis for DNR's proposal to refuse the bulk of the grant money they seek. Among them are Petitioners' Exhibit Nos. 14 and 16. These are statements of intended agency action, which do not purport in and of themselves to create rights or adjudicate claims. See *Florida*

186

*State University v. Dann*, 800 So.2d 1304 (Fla. 1st DCA 1981). An agency statement of its intent to act is an opportunity to "record and communicate emerging policy . . . without offending Section 120.54." *McDonald v. Department of Banking and Finance*, 346 So.2d 569, 580 (Fla. 1st DCA 1977). The letter to Mr. Mahler, Petitioners' Exhibit No. 24, is even more preliminary in tone ("I hope this will serve as some guidance . . ."). Although several lakes (all 34 in Polk County) were discussed, the letter did not purport by its own effect to decide anything with respect to those particular lakes, or any other body of water in Florida. At most, the letter may be said to relay "agency legal opinions prior to their use in connection with an agency action." Section 120.52(15), Florida Statutes (1984 Supp.).

Petitioners also cited the economic impact statement, but economic impact statements are not subject to challenge as illicit rules. Although an economic impact statement necessarily involves an interpretation of the rule it analyzes, the economic impact statement does not have the effect of a rule of law.

Petitioners' quarrel is with DNR's interpretation of Rule 16C-50.03, Florida Administrative Code, not with the rule itself, and counsel explicitly stated as much (T.21). Petitioners contend:

> Only in the Department's policy regarding distribution of aquatic plant control funds is there an intent to prioritize aquatic plant control by land use characteristics rather than the magnitude of the plant problem.

> Petitioners' Proposed Findings of Fact, Conclusions of Law and Final Order, p. 14.

"Only in the Department's policy" do petitioners find the eligibility criterion of which they complain. While certain writings support the existence of the policy, none purports to have statewide application as a rule of law. DNR relies on Rule 16C-50.03, Florida Administrative Code, itself, not on any interpretive restatement. Whether DNR's interpretation is supportable in a given case depends on the evidence adduced in Section 120.57 proceedings. *McDonald v. Department of Banking and Finance*, 346 So.2d 569 (Fla. 1st DCA 1977). Petitioners failed to prove the existence of an illicit rule.

It is, accordingly,

ORDERED:

> The petition to determine the invalidity of a rule is dismissed.